Filed 11/3/22  P. v. Sherwood CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077239 |
| v. | (Super.Ct.No. FBV3726) |
| ROBIN LEE SHERWOOD, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Eric M. Nakata, Judge. Affirmed.

Cuauhtemoc Ortega, Federal Public Defender, Susel B. Carrillo-Orellana and Lauren Collins, Deputy Federal Public Defenders, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting, Alan L. Amann and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

In 2003, appellant Robin Lee Sherwood came up with a plan to rob his former employer at his home. Sherwood and an associate recruited two other men to help with the heist. Sherwood told his associates he knew his former employer had a safe with a large amount of cash in his home and the plan was to enter forcibly and take the money. Sherwood drove his associates to the home, pointed it out, and stayed in his car to act as a lookout because he knew he would be recognized. Two of the men were armed with handguns, which Sherwood knew. When the three men forced their way into the home, a struggle ensued, and one of the men hit the victim on the head with a flashlight and another man shot him fatally.

In 2006, after his trial had commenced, Sherwood pled guilty to first degree felony murder for his role in the robbery and admitted special circumstances for burglary murder and robbery murder. After the Legislature passed Senate Bill No. 1437 (Stats. 2018, ch. 1015) (SB 1437), which (among other things) redefined felony murder, Sherwood filed a petition under new Penal Code former section 1170.95 (now § 1172.6) claiming he was eligible to have his murder conviction vacated.[1]

The judge who presided at Sherwood's original trial, San Bernardino County Superior Court Judge Eric M. Nakata, also handled the petition. He determined Sherwood had established a prima facie case and set an evidentiary hearing to determine whether he could be convicted of murder under the law as amended. In the end, he concluded it was

---

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

beyond a reasonable doubt Sherwood was a major participant in the crime who acted with reckless indifference to human life and therefore remained guilty of felony murder.

Sherwood argues the trial judge erred by admitting some exhibits restricted by the later passage of Senate Bill No. 775. However, almost all the evidence the trial judge admitted remains permissible under the modified law. Though some items the trial judge admitted could be used for only limited purposes, the trial judge denied Sherwood's petition based on other evidence. Sherwood also argues the People didn't present sufficient evidence to support the finding he was a major participant who acted with reckless indifference to human life. We conclude the record was more than sufficient to support the finding.

We therefore affirm the order denying Sherwood's petition.

# I

# FACTS

A. *Opinion from Sherwood's Appeal from the Conviction*

In the opinion from Sherwood's original appeal from his conviction and sentence, a panel of this court summarized the crime for which he was convicted as follows.

"[T]he victim was shot at the front door of his residence. The police interviewed Vavao Faumui, who told them that he, [Sherwood], and two other men went to the victim's residence to rob him. [Sherwood], who was a former employee of the victim, believed that the victim kept a large amount of money in his safe at this residence. Faumui told the police that when the victim answered the door, Faumui wrestled with

him. Then somebody shot the victim. The victim eventually died from his gunshot wounds.

"The police also interviewed [Sherwood]. [Sherwood] said that the plan was to go to the victim's house and steal the safe, and that nobody was supposed to be home at the time. [Sherwood] said that he drove Faumui to the victim's house, dropped him off, and then parked across the street to act as a lookout, in case the police came.

"[Sherwood] was charged with several offenses, and pled not guilty. His case went to trial on September 6, 2006. After a number of prosecution witnesses testified, [Sherwood] decided to change his plea. On September 13, 2006, he signed a plea form indicating that he was voluntarily pleading guilty because he was guilty, and for no other reason (i.e., there was no plea agreement with the prosecution)." (*People v. Sherwood* (Dec. 7, 2007, E041930) 2007 WL 4285290, *1 [nonpub. opn.].) He was convicted on a felony-murder theory.

Sherwood appealed on the ground that complaints he made against his attorney entitled him to a hearing under *People v. Marsden* (1970) 2 Cal.3d 118. He also contested a $10,000 parole revocation fine imposed under Penal Code section 1202.45. This court concluded Sherwood was not entitled to a *Marsden* hearing but struck the fine and otherwise affirmed the judgment. (*People v. Sherwood*, *supra*, E041930, pp. *2-*3.)

4

B.  *Statutory Changes to the Felony-Murder Rule*

In 2018, the Legislature adopted, and the Governor signed, SB 1437, which was designed "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (SB 1437, *supra*, at § 1.)

SB 1437 changed the substantive offense of first and second degree murder, removing the exceptions that had allowed such convictions despite the absence of malice. Effective January 1, 2019, SB 1437 amended Penal Code sections 188 and 189 to restrict the scope of first degree felony murder and eliminate second degree murder based on the natural and probable consequences doctrine. (SB 1437, *supra*, §§ 2-3.) As amended, Penal Code section 188 directs malice may not "be imputed to a person based solely on his or her participation in a crime." (Pen. Code, § 188, subd. (a)(3).)

Under the amended law, "to be convicted of murder, a principal in a crime shall act with malice," except for cases applying the narrowed felony-murder rule in new subdivision (e) of Penal Code section 189, under which "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder *only if* one of the following is proven: [¶] (1) The person was the actual killer[;] [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree[;] [¶] [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to

5

human life, as described in subdivision (d) of [Penal Code] Section 190.2." (Pen. Code, § 189, subd. (e), italics added.)

The Legislature also added former section 1170.95 (now § 1172.6)[2] to the Penal Code, which created a procedure for offenders previously convicted of felony murder or under a natural and probable consequences theory to obtain the benefits of these changes retrospectively by petitioning for relief in the court where they were convicted. If they make a prima facie showing that they're entitled to have their prior convictions vacated, then they're entitled to receive "a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced." (Pen. Code, § 1170.95, subds. (c), (d)(1).) "If petitioner is entitled to relief pursuant to this section, murder was charged generically, and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes." (*Id.*, subd. (e).)

C.  *Sherwood's Petition to Vacate his Felony-Murder Conviction*

In February 2019, Sherwood filed a petition under the new law to vacate his felony-murder conviction. In May 2019, the trial judge determined SB 1437 was unconstitutional and struck the petition. However, we later reversed the trial judge and

---

[2] Though Sherwood filed his petition before the numbering change, from this point on we will refer to former Penal Code section 1170.95 as section 1172.6 and to Sherwood's petition as a section 1172.6 petition.

remanded the case directing him to address the merits of Sherwood's petition. (*People v. Sherwood* (June 16, 2020, E073236) 2020 WL 3261455 [nonpub. opn.].)

On remand, the People filed an opposition to the petition in October 2020, arguing Sherwood remained liable for murder under a still-valid theory and argued his admission to the murder special circumstances rendered him ineligible. They attached several exhibits to their opposition: (1) this court's opinion in Sherwood's original appeal, (2) the appellate opinion in the case of two of Sherwood's codefendants, (3) transcripts of two interviews Sherwood gave to the police, (4) a transcript of Sherwood's testimony in a codefendant's trial, (5) Sherwood's letter to the district attorney, (6) Sherwood's letter to the trial judge, and (7) transcripts of five phone calls Sherwood made from jail before his trial. The trial judge held a hearing on January 29, 2021 and determined our disposition of the appeal required him to conclude Sherwood had established a prima facie case for relief and to hold an evidentiary hearing.

D. *The Evidentiary Hearing*

The judge held the evidentiary hearing on May 28, 2021. At the outset, he indicated he had read Sherwood's petition, the People's motion to strike the petition, Sherwood's plea, and reviewed the sentencing. The People submitted a disk containing the record from the original trial including the reporter's transcript and the clerk's transcript, which included the preliminary hearing transcript. The judge commented he had no way to review the contents of the disk at the hearing but assumed the parties would point out any portion that was important and admitted the records.

Sherwood objected to the introduction of the preliminary hearing transcript on the ground the testimony constituted hearsay and introducing it would violate his confrontation rights under the Sixth Amendment to the United States Constitution. The trial judge concluded that because of the postconviction nature of the proceedings, the preliminary hearing transcript could be considered and overruled Sherwood's objection.

The People introduced a copy of the probation report prepared for Sherwood's sentencing. Sherwood objected the report constituted hearsay and objected to the judge considering its contents for the truth of the matter asserted. He pointed out, and the judge agreed, he wouldn't have considered the report at trial, prior to the conviction, and argued it was inappropriate to consider the same evidence now in determining whether the People had met their burden of proving he could still be convicted under a valid theory. The trial judge overruled the objection and took judicial notice of the probation report.

The People next introduced the exhibits they had attached to their opposition to Sherwood's petition, starting with Exhibits A, B, and C, which were copies of the appellate decisions in Sherwood's original appeal and the appeals of Sherwood's codefendants, James Franklin and Vavao Faumui. Sherwood objected the judge should not consider the statements in those opinions for the truth of the matter asserted and argued the trial transcript was the best evidence. The trial judge admitted all three opinions.

The People then introduced several exhibits containing Sherwood's own statements. These exhibits include transcripts of two interviews he gave to police before

8

his trial (Exhs. D-1, D-2), a transcript of his testimony during the trial of his codefendants (Exh. E), letters he wrote to the trial judge and to the district attorney after his plea (Exhs. F, G), and transcripts of recorded phone calls he made to family and friends while incarcerated before trial (Exhs. H1-H5). Sherwood argued these statements were hearsay, irrelevant, and in some cases that the prejudice of admitting them outweighed their probative value. The trial judge admitted the statements as admissions and as, in the balance, more probative than prejudicial.

The parties then argued over whether the evidence submitted showed Sherwood was still guilty of first degree murder. The People agued Sherwood should be found guilty of felony murder under the narrowed definition of the offense because the evidence showed he was a major participant in the underlying felony. The People relied on Sherwood's own statements, primarily those made to the police before trial, to establish that proposition. They pointed out he had admitted to police he planned the burglary with Franklin two months before carrying out the crime and admitted he didn't want to be at the door for fear of being recognized, which showed he knew the risk of a confrontation. He also admitted recruiting the other participants, knowing they were armed with guns, and that he had served as a lookout. The People pointed out on rebuttal that Sherwood described the guns in detail in a police interview. They also pointed out he repeated elements of these admissions in his testimony at his codefendants' trial and in the letter to the district attorney.

Sherwood's counsel argued principally that his statements were not sufficient to establish he was a major participant. She pointed out he made inconsistent statements on several key facts, especially his knowledge that the other men were armed. She argued his statements showed only that he knew of the plan to burglarize the victim, not that he was the ringleader. The inconsistencies in his statements, she argued, meant the People couldn't carry their burden of showing guilt beyond a reasonable doubt. Finally, she argued Sherwood was not present at the shooting, so was in no position to prevent it.

Neither party referred to the preliminary hearing transcript, probation report, or appellate decisions in support of finding Sherwood either guilty or not guilty.

The trial judge ruled from the bench immediately after the completion of argument. Though the parties also argued whether Sherwood was guilty as an aider and abettor or under an implied-malice theory, the trial judge ruled he was guilty under a felony-murder theory as a major participant. "In this case, it is clear he was a major participant in this crime; that if the district attorney were to have to try him again, that they could pick a theory at that time because the law has changed . . . [¶] . . . I don't think there's any question about it, he was a major participant[.] . . . [¶] I would find that under 1170.95 beyond a reasonable doubt that Mr. Sherwood could be and would be convicted of first degree murder."

Sherwood filed a timely notice of appeal.

# II

# ANALYSIS

A. *Admission Of Evidence*

    1. *Preliminary hearing transcript, probation report, and appellate decisions*

Sherwood argues the trial court erred by admitting the preliminary hearing transcript, his probation report, and the appellate decisions in his own and his codefendants' cases because they are barred by changes the Legislature made to section 1172.6 when it passed Senate Bill No. 775 (Stats. 2021, ch. 551) (SB 775). Though the new law went into effect on January 1, 2022, after Sherwood's hearing, he argues the rule applies retroactively.

SB 775 now specifies the admission of evidence at a section 1172.6 hearing is governed by the Evidence Code. "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." (SB 775, § 2, subd. (d)(3).)

Sherwood argues this new language conflicts with the trial court's decision to admit the preliminary hearing transcript and probation report because under the Evidence Code these two exhibits should have been excluded. He points out the preliminary hearing transcript consisted entirely of the testimony of Detective Thomas Hutchins about his investigation, which included relaying statements made to him by Vavao Faumui. Since hearsay evidence is inadmissible absent an exception, he argues, and there was no exception to make Detective Hutchins's testimony about Faumui's statements admissible, the trial judge erred by admitting the transcript.

He makes a similar argument about the probation report. Though he admits the report included his own admissions, he argues much of the report constitutes hearsay not subject to an exception, including a summary of his prior record, the circumstances of the offense, a victim's statement, and the probation officer's analysis of his culpability. Citing *People v. Burnes* (2015) 242 Cal.App.4th 1452 and *People v. Reed* (1996) 13 Cal.4th 217, 223-224, he argues that evidence was inadmissible.

Concerning the appellate decisions, Sherwood argues SB 775 makes clear they may be used only to establish facts about the *procedural history* of the case, not to establish his guilt. He argues case law governing prior to SB 775 already established that facts stated in appellate opinions cannot be judicially noticed to establish truth. (E.g., *Gilmore v. Superior Court* (1991) 230 Cal.App.3d 416, 418.)

The People argue the changes made by SB 775 are not retroactive and, in any event, the evidence was in fact admissible under a variety of theories. We need not reach

those issues for the simple reason that any error would require reversal only if it resulted in a miscarriage of justice which occurs only if, absent the error, it is reasonably probable the judge would have reached a result more favorable to Sherwood. (Evid. Code, § 353; *People v. Watson* (1956) 46 Cal.2d 818, 836.) As the appellant, it is Sherwood's burden to show both that the admission was erroneous *and* that the admission likely affected the outcome to his detriment. (*People v. Williams* (1997) 16 Cal.4th 153, 207-208.)

The hearing transcript makes clear Sherwood has not and cannot carry his burden of establishing harm. The People moved to admit the transcript and report as part of the record on Sherwood's first appeal. Sherwood's counsel objected, but the trial judge overruled the objections, took judicial notice of the documents, and admitted them. However, the transcript also demonstrates the People submitted the documents on a disk at the hearing, and the judge had no way to review them. The judge noted the problem and told the parties he would rely on *them* to point out anything contained on the disk that was important to deciding whether Sherwood was eligible for relief. When it came time to argue the evidence, though, neither party referred the judge to the preliminary hearing transcript or the probation report. Nor did they refer to the prior appellate decisions.

Instead, they focused on Sherwood's statements to the police before his trial, his testimony at the trial of his codefendants, and his statements in a letter he wrote to the district attorney after his trial. The People pointed out he admitted to police he planned the burglary with Franklin two months before and admitted he didn't want to be at the door because he knew he would be recognized. He also admitted to recruiting the other

13

participants, knowing they were carrying guns, and serving as a lookout. Sherwood's counsel understandably didn't refer to the preliminary hearing transcript or the probation report either. Instead, she focused on the same statements the People relied on and argued they showed inconsistencies on key facts and established only that he knew of the plan to burglarize the victim, not that he was the ringleader.

Sherwood does not point to anything indicating the People relied on the preliminary hearing transcript, probation report, or appellate decisions at the hearing, nor does he point to any reason for concluding these items affected the judge's decision. We therefore conclude he has failed to establish a different ruling on admitting these items would have led the trial judge to reach a more favorable conclusion about whether he was a major participant in the robbery that led to the murder.

2. *Sherwood's trial testimony, letters, and phone calls*

Sherwood also argues the trial judge erred by admitting several other exhibits on the basis that they contained hearsay statements by third parties and contained inflammatory remarks made by Sherwood. He argues the trial judge should have excluded the exhibits as more prejudicial than probative under Evidence Code section 352. We review the trial judge's decision for abuse of discretion. (*People v. Jones* (2017) 3 Cal.5th 583, 609.)

The offending exhibits are a transcript of Sherwood's testimony at his codefendants' trial (Exh. E), letters he wrote to the district attorney (Exh. F) and the trial judge (Exh. G) after his plea but before sentencing, and transcripts of five phone calls

14

Sherwood made to friends and family while he was detained before his trial (Exhs. H1-H5).[3] He points out that one of his letters contained disparaging remarks about the trial judge, the trial transcript included heated exchanges with the prosecutor, and his phone calls included irrelevant and prejudicial conversations on a variety of topics. These characterizations are a fair representation of the contents of the exhibits. However, the exhibits also contained evidence relevant to Sherwood's participation in the robbery, so the decision whether to admit the exhibits for the relevant portions lay within the trial judge's broad discretion.

We conclude the trial judge did not abuse his discretion in admitting the exhibits. The fear of prejudice is less severe where the trial judge is the fact finder, as we presume judges follow the law and exclude inflammatory information from consideration. Here, Sherwood has provided no reason to think the judge was swayed by the inflammatory content in some of the exhibits, and we presume trial judges are capable of properly applying evidence admitted for limited purposes. (*In re Jose M.* (1994) 21 Cal.App.4th 1470, 1481.)

B. *Substantial Evidence*

Sherwood argues there was insufficient evidence to support the trial judge's finding at the section 1172.6 evidentiary hearing that he remains liable for murder as a

---

[3] Sherwood also objects that a transcript of a police interview (Exh. D-2) should not have been admitted because it was not admitted at his trial. However, section 1172.6 does not limit parties to the record of conviction, and he provides no authority imposing such a limitation.

major participant, a still applicable basis for applying the felony-murder rule after the changes to the murder statute put in place by SB 1437.

We review the trial judge's determination that Sherwood was a major participant who acted with reckless indifference to human life for substantial evidence. (*People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1087-1091.) "Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298, as modified, rehg. den. Mar. 16, 2022, review den. May 11, 2022.)

The California Supreme Court set forth a list of factors to help determine whether an individual was a "major participant." (*People v. Banks* (2015) 61 Cal.4th 788.) The list is not exclusive and includes the role the defendant had in planning the criminal enterprise, his role in supplying or using lethal weapons, his awareness of the dangers posed by the nature of the crime, such as the weapons used or experience of the other participants, whether he was present at the scene of the killing, whether his actions or inactions played a particular role in the death, and what he did after the killing. (*Id.* at p. 803.) Later, the Court explained the meaning of "reckless disregard for life," and set forth another nonexclusive list of factors. (*People v. Clark* (2016) 63 Cal.4th 522.) These factors include the defendant's knowledge of weapons used in the crime, how those

16

weapons were used, the number of weapons used, the defendant's proximity to the crime, his opportunity to stop the killing or aid the victims, the duration of the crime, the defendant's knowledge of the killer's propensity to kill, and the defendant's efforts, if any, to minimize the possibility of violence during the crime. (*Id.* at pp. 616-623.) The Court also explained that "major participation" and "reckless indifference to human life" "significantly overlap both in this case and in general, for the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life." (*Id.* at p. 615.)

Here the evidence was more than sufficient for the trial judge to find Sherwood was a major participant who acted with reckless indifference to human life. First, the trial judge was able to weigh the fact that appellant pled guilty to the burglary and robbery special circumstances, which required him to admit he was a "major participant" who acted with "reckless indifference to human life."[4] (Pen. Code, § 190.2, subd. (d).)

In addition, Sherwood's own statements and testimony gave the trial judge a solid basis for finding he was a major participant who acted with reckless indifference to human life. He admitted to the police and in his sworn testimony at his codefendants' trial that he came up with the plan to rob his former boss with codefendant Franklin. He

---

[4] The People argue Sherwood was ineligible as a matter of law for relief under section 1172.6 because he admitted being a major participant who acted with reckless indifference to human life by pleading guilty to the burglary and robbery special circumstances. The California Supreme Court recently decided a felony-murder special-circumstance finding made before *Banks* and *Clark* does not preclude a defendant from making a prima facie showing of eligibility for relief under section 1172.6. (*People v. Strong* (Aug. 8, 2022, S266606) slip. opn.)

also admitted recruiting two other men to assist with the home invasion. He knew two of his partners were armed with guns, which he described in detail. Indeed, Sherwood knew one codefendant had a .357-caliber handgun because they had robbed a methamphetamine manufacturer together only two weeks earlier and they both stole guns from that victim. He also admitted he acted as the lookout because he knew the victim and his girlfriend would recognize him even if he was disguised. Thus, Sherwood's own statements show he formed the plan for the robbery and was instrumental in implementing the plan.

In addition, substantial evidence showed Sherwood was aware of the dangers posed by the home invasion. As noted, Sherwood knew two of the men were carrying handguns when they approached the house. When they arrived, they rang the doorbell, and the victim's girlfriend said she saw someone "squatting or hiding" at the "corner of the house." When the victim opened the door, the men forced their way in and fought with him rather than fleeing. Though Sherwood's position across the street from the house prevented him from intervening in the shooting, it is undisputed he never made any attempt to call an ambulance or report the shooting after the fact. Nor did he make any attempt to minimize the violence of the crime. This evidence gave the trial judge a sufficient basis to find that violence was a significant risk of the plan. Sherwood admitted as much at his codefendants' trial. "I took people to carry out a burglary, I had them take firearms for the sole purpose of killing police officers if pulled over leaving the scene, these people shot the victim in the back, killing him." Thus, Sherwood's own statements

provide substantial evidence he knew his plan was putting the lives of others in significant risk.

Under these circumstances, we conclude the trial court's finding that appellant was a major participant who acted with reckless indifference to human life had substantial support.

## III

## DISPOSITION

We affirm the order denying Sherwood's petition.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
J.

We concur:

CODRINGTON
Acting P. J.

MENETREZ
J.